**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| **AUTOMOBILI LAMBORGHINI S.P.A.,** | ) | |
| ***et al.*,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 1:18-cv-62** |
| | ) | |
| **JOSE ANTONIO FERNANDEZ GARCIA,** | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

This trademark infringement and declaratory judgment action arises from the alleged marketing and sale of counterfeit Lamborghini-marked merchandise in the United States by defendants on the website www.lamborghinigrupo.com.[1] Based on this alleged conduct by defendants, plaintiffs, the owner of the Lamborghini trademark and two corporate affiliates, have asserted claims of (i) trademark infringement and counterfeiting, (ii) cybersquatting, (iii) false designation of origin, and (iv) trademark dilution under the Lanham Act. *See* 15 U.S.C. Sections 1114, 1116, 1117, 1125(a), 1125(c), 1125(d). Plaintiffs also seek a declaratory judgment against Garcia pursuant to 28 U.S.C. § 2201(a) that Garcia's purported licensing agreements with Lamborghini are (v) invalid, (vi) unenforceable, and (vii) fraudulent.

At issue in this case is plaintiffs' motion for default judgment against Garcia. Plaintiffs' default judgment motion was referred to the Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On April 20, 2020, the Magistrate Judge entered a Report

---

[1] Plaintiffs' original complaint sued four defendants—(i) Jose Antonio Fernandez Garcia, (ii) Anthony Crudup, (iii) Robert Braner, and (iv) Lamborghini Latino America USA. On September 30, 2019, plaintiffs filed a stipulated motion to dismiss with prejudice Crudup, Braner and Lamborghini Latino America USA pursuant to Rule 41(a)(2), Fed. R. Civ. P. Plaintiffs agreed to terms on a negotiated settlement with those three defendants. Accordingly, Garcia is the only remaining defendant in this action.

and Recommendation (the "Report") in this case, recommending that plaintiffs' default judgment motion be granted in part and denied in part. Specifically, the Report recommended that default judgment be entered against Garcia on Counts I, III, IV, V, VI, and VII of plaintiffs' First Amended Complaint ("FAC") and that default judgment be denied without prejudice on Count II of the FAC. On May 11, 2020, Garcia filed objections to the Report.[2] In his objections, Garcia requests (i) that judgment on plaintiffs' motion for default judgment be postponed until after a decision on his appeal of the November 7, 2019 Order in this case; (ii) that default judgment not be entered so that he can defend himself in this matter; (iii) that default judgment not be entered because service was improper under the Hague Convention; and (iv) that all the recommendations in the Report be rejected.

For the reasons that follow, Garcia's objections are overruled, the Magistrate Judge's Report is adopted, and plaintiffs' motion for default judgment is granted in part and denied in part.

## I.

The Magistrate Judge's Report fully and correctly sets forth the procedural and factual history of this case. *See* Report, Dkt. 209, at 1-7, 9-14. Accordingly, the Court adopts as its own the procedural and factual background set forth in the Report.

On January 12, 2018, plaintiffs filed this lawsuit against four defendants: (i) Jose Antonio Fernandez Garcia, (ii) Anthony Crudup, (iii) Robert Braner, and (iv) Lamborghini Latino America USA. Plaintiffs brought claims of trademark infringement and counterfeiting, cybersquatting, false

---

[2] Although Rule 72(b), Fed. R. Civ. P., provides that objections must be served and filed within 14 days of the magistrate judge's report and recommendation, Garcia's objections have been treated as timely because they appear to have been delivered to DHL on May 4, 2020 for shipment from Argentina to Alexandria, Virginia. *See* Dkt. 210-1. Thus, although Garcia's objections were not filed until May 11, 2020 (21 days after the Report was filed), it appears that his objections were placed in transit 14 days after the Report was filed. *See* Dkt. 210-1 (DHL package that states letter shipped from Argentina on May 4, 2020); Dkt. 209 (Magistrate Judge's Report filed on April 20, 2020).

designation of origin, and trademark dilution because defendants allegedly "trade[d] upon Lamborghini's world-renowned reputation by selling unauthorized and unlicensed counterfeit products and us[ed] counterfeit versions of Lamborghini's federally-registered trademarks." Complaint, Dkt. 1, at ¶ 2.

Between May 2018 and December 2018, plaintiffs were granted three extensions of time to serve defendant Garcia because Garcia was utilizing evasive tactics to avoid plaintiffs' attempts to serve him in Argentina pursuant to the Hague Convention and Rule 4(f)(1), Fed. R. Civ. P.[3] Specifically, plaintiffs hired two different foreign service firms and spent nearly twelve months attempting to serve Garcia in Argentina in accordance with the Hague Convention and Rule 4(f)(1), Fed. R. Civ. P.[4] These efforts culminated on October 2, 2018 when Argentinian authorities, acting in accordance with the Hague Convention, attempted to serve Garcia at his known address and discovered that it was vacant and under construction.[5] Moreover, Garcia and his Mexican attorney were communicating with plaintiffs via email during this same time period, and they ignored plaintiffs' inquiries related to service of the complaint in this lawsuit.[6] After these failed attempts to effect service on Garcia in accordance with the Hague Convention, plaintiffs requested on December 12, 2018 that they be allowed to serve Garcia via email pursuant to Rule 4(f)(3), Fed. R. Civ. P..[7] On January 18, 2019, an Order issued granting plaintiffs' request to serve Garcia

---

[3] *See* Dkt. 48 (May 21, 2018 Order granting extension of time to serve Garcia until August 10, 2018); Dkt. 55 (August 9, 2018 Order granting extension of time to serve Garcia until October 10, 2018); Dkt. 60 (October 11, 2018 Order granting extension of time to serve Garcia until December 10, 2018).

[4] *See* Dkt. 62, at 4-6 (bullet form summary of all steps taken by plaintiffs to serve Garcia between January 12, 2018 and December 8, 2018).

[5] *See id.* at 2.

[6] *See id.* at 2-3.

[7] *See* Dkt. 61.

via email.[8]

On February 12, 2019, over a year after plaintiffs filed the original complaint, counsel filed a notice of appearance on behalf of Garcia.[9] On February 27, 2019, Garcia, by counsel, filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim. After extensive briefing and an evidentiary hearing held on August 1, 2019, Garcia's motion to dismiss was denied by Order dated August 21, 2019 because (i) personal jurisdiction could be exercised over Garcia pursuant to Rule 4(k)(2), Fed. R. Civ. P., and (ii) plaintiffs alleged sufficient facts to state a claim on which relief could be granted.[10]

On September 4, 2019, Garcia, by counsel, filed an answer to plaintiffs' complaint. Shortly thereafter, Garcia's attorneys filed a motion to withdraw as counsel of record because circumstances rendered their further services "impossible."[11] On September 26, 2019, plaintiffs filed a motion for leave to file the FAC. On October 4, 2019, after holding a hearing on Garcia's attorneys' motion to withdraw, an Order issued that held the motion in abeyance and ordered that Garcia hire new counsel or enter a sworn declaration that he intended to proceed *pro se* by November 4, 2019.[12] On October 23, 2019, Garcia sent a letter to the Court which was docketed, and the letter (i) represented that he terminated his attorneys because he could no longer afford their services, (ii) stated that he intended to proceed *pro se* in this matter, (iii) requested that a *pro bono* counsel be appointed to represent him, and (iv) requested that all matters related to this case

---

[8] *See* Dkt. 70.

[9] *See* Dkt. 74, 79, 80.

[10] *See Automobili Lamborghini S.P.A. v. Lamborghini Latino Am. USA*, 400 F. Supp. 3d 471, 478-79 (E.D. Va. 2019).

[11] *See* Dkt. 150.

[12] *See* Dkt. 176.

be sent to him via his email address (joanferci@gmail.com).[13]

On October 28, 2019, an Order issued that denied Garcia's request for *pro bono* representation and granted Garcia's attorneys' motion to withdraw.[14] The October 28, 2019 Order further reminded Garcia of his ongoing discovery obligations and granted Garcia an additional fourteen days to object to plaintiffs' motion for leave to file the FAC. On November 6, 2019, Garcia submitted another letter. Garcia's November 6, 2019 letter requested reconsideration of the denial of his request for *pro bono* counsel and objected to plaintiffs' motion for leave to file the FAC.[15] On November 7, 2019, an Order issued that denied Garcia's motion for reconsideration and granted plaintiffs' motion for leave to file the FAC.[16] On November 8, 2019, plaintiffs filed the FAC and served the FAC on Garcia via the email address Garcia had provided for all case-related materials and communication.[17] On November 18, 2019, Garcia filed a notice of appeal of the November 7, 2019 Order.

Despite sending multiple letters to the Court that were docketed during November 2019, Garcia failed to respond to the FAC within the fourteen days provided pursuant to Rule 15(a)(3), Fed. R. Civ. P. Accordingly, on November 26, 2019, plaintiffs requested the clerk's entry of default as to Garcia, and the clerk entered default on November 27, 2019.[18] On December 13, 2019, plaintiffs filed the instant motion for default judgment against Garcia.[19] Plaintiffs' default

---

[13] *See* Dkt. 178.

[14] *See* Dkt. 179.

[15] *See* Dkt. 180.

[16] *See* Dkt. 181.

[17] *See* Dkt. 182, 183.

[18] *See* Dkt. 188, 198.

[19] *See* Dkt. 202, 203.

judgment motion was referred to the Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On December 20, 2019, a hearing was held on plaintiffs' motion for default judgment, Garcia did not appear, and the Magistrate Judge took the matter under advisement.[20] On April 20, 2020, the Magistrate Judge entered the Report in this case, recommending that plaintiffs' default judgment motion be granted in part and denied in part. On May 11, 2020, Garcia filed objections to the Report.

In addition to failing to respond to plaintiffs' FAC, Garcia has refused to fulfill his discovery obligations in this matter. Specifically, Garcia has refused (i) to produce materials responsive to plaintiffs' First Set of Requests for Production, (ii) to respond to plaintiffs' First Set of Interrogatories, and (iii) to make himself available for a deposition.[21] Plaintiffs served these discovery requests on Garcia's counsel on October 2, 2019, and re-served them on Garcia on October 28, 2019 and November 8, 2019 after Garcia chose to proceed *pro se* in this matter.[22] On November 26, 2019, plaintiffs filed a motion to compel full discovery responses and to compel the deposition appearance of Garcia.[23] On December 10, 2019, an Order issued that granted plaintiffs' motion to compel and ordered Garcia to respond to plaintiffs' discovery requests and to appear for a deposition.[24] Garcia has still not responded to plaintiffs' discovery requests nor made himself available for a deposition in this matter.

Although the procedural history of this matter is quite lengthy, the factual record can be

---

[20] *See* Dkt. 206.

[21] *See* Plaintiffs' Memorandum in Support of Their Motion to Compel, Dkt. 192, at 1-2.

[22] *Id.* at 2.

[23] *See* Dkt. 191.

[24] *See* December 10, 2019 Order, Dkt. 200.

succinctly set forth.[25] Garcia is an individual residing in Argentina. Plaintiffs manufacture and sell high-end automobiles, automobile parts and accessories, and branded merchandise, all of which utilize a bull logo to represent the brand, through a network of licensed dealerships in the United States and through online stores at www.lamborghini.com and www.lamborghinistore.com.[26] Plaintiff Lamborghini owns several distinctive trademarks that are registered with the U.S. Patent and Trademark Office ("USPTO").[27]

The FAC alleges that the four defendants worked together under the guise of Lamborghini Latino America USA "to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products that are either counterfeit or infringe on plaintiffs' trademarks." FAC, Dkt. 182, at ¶¶ 23, 25. Allegedly, Garcia met Braner in 1994, when Braner was the president of Automobili Lamborghini USA, the North American distribution and marketing arm for Lamborghini automobiles. *Id.* at ¶ 26. Garcia and Braner discussed the possibility of Garcia distributing Lamborghini products in Latin America. *Id.* In July 1995, Lamborghini and Garcia signed a "letter of intent" regarding the possible distribution of Lamborghini automobiles in Latin America as well as a license to market and sell products under the Lamborghini logos in Latin America. *Id.* at ¶

---

[25] These facts are derived from the FAC and the exhibits attached to the FAC because the well-pleaded allegations of fact set forth in a complaint are deemed admitted against a defaulting party. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (a defendant in default admits the plaintiff's well-pleaded allegations of fact in a plaintiff's complaint).

[26] Specifically, plaintiff Automobili Lamborghini S.p.A ("Lamborghini") is an Italian corporation that manufactures and sells high-end automobiles that display a bull logo to represent the brand. Plaintiff Volkswagen Group of America, Inc. is a New Jersey corporation that enforces Automobili Lamborghini S.p.A's trademarks in the United States pursuant to an agreement between the companies. And plaintiff Automobili Lamborghini America, LLC is a Delaware limited liability company that is a wholly owned subsidiary of Volkswagen Group of America, Inc.

[27] Plaintiffs included a representative chart of its registered trademarks in the FAC. *See* FAC, Dkt. 182, at 5-9. Plaintiffs also submitted "status" copies of the trademark registrations, obtained from the USPTO's Trademark Status Document Retrieval database. *See id.* at ¶ 16; Dkt. 182-2.

27.[28] In August 1995, Garcia met with Nigel Gordon-Stewart, the head of marketing for Lamborghini at the time, to attempt to finalize sales and licensing agreements. *Id.* at ¶ 27. Although Garcia and Gordon-Stewart worked through draft agreements during this meeting, Braner and Lamborghini found the draft agreements unacceptable and never signed them. *Id.* at ¶ 28. Plaintiffs allege that Garcia knew that the agreements were merely drafts, that the draft agreements were never "signed by anyone with proper authority from Lamborghini[, and] that they did not confer any rights from Lamborghini to Garcia." *Id.* at ¶ 34. Garcia and Lamborghini never reached an agreement, and accordingly, Garcia was never authorized or licensed to use any of Lamborghini's federally-registered trademarks.

Despite never reaching an agreement with Lamborghini, Garcia allegedly possesses a set of licensing agreements identical to the draft agreements from his meeting with Gordon-Stewart that have Braner's forged signature on them. *Id.* at ¶ 38. The FAC alleges that Garcia has used these purported licensing agreements "to establish illegal enterprises throughout Latin America and the United States." *Id.* at ¶ 39. In 2015, Garcia and defendant Crudup decided to manufacture and sell merchandise, including cigars and t-shirts, bearing the Lamborghini trademarks in the United States. *Id.* at ¶ 41. The FAC alleges that Garcia and Crudup worked together to design and create the merchandise and to use the website "www.lamborghinigrupo.com" as a platform to sell the counterfeit Lamborghini products. *Id.* Despite not being authorized retailers of Lamborghini products, defendants market and sell counterfeit and infringing Lamborghini products through online marketplaces, such as Etsy, Lord of the Cigars (www.lordcigars.com), Cigar Luxury

---

[28] The letter of intent is attached as Exhibit 5 to Braner's affidavit. *See* Dkt. 182-9 at 74. Plaintiffs' attached Braner's affidavit and the exhibits associated with Braner's affidavit as Exhibit 9 to the FAC. *See* Dkt. 182-9. Because these documents have been attached to the FAC as an exhibit, they are properly considered here. *See* Rule 10(c), Fed. R. Civ. P. ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (a defendant in default admits the plaintiff's well-pleaded allegations of fact in a plaintiff's complaint).

(www.cigarluxury.com), TNT Cigars (www.tntcigars.com), and the website "lamborghinigrupo.com." *Id.* at ¶ 4. Defendants market their products as "officially licensed Lamborghini Products." *Id.* at ¶ 34. When items are sold, defendants ship the products to consumers throughout the United States, including into the Eastern District of Virginia. *Id.* at ¶¶ 4, 24.

Plaintiffs have brought the instant suit seeking monetary damages and injunctive relief against Garcia for trademark infringement and counterfeiting, as well as a declaratory judgment that Garcia's purported licensing agreements with Lamborghini are invalid, unenforceable, and fraudulent.

## II.

As an initial matter, it is necessary to determine whether there is jurisdiction to consider plaintiffs' motion for default judgment. Garcia has appealed the November 7, 2019 Order in this case,[29] which (i) granted plaintiffs' motion for leave to file the FAC and (ii) denied Garcia's request for reconsideration of the October 28, 2019 Order that denied Garcia's request for the appointment of *pro bono* counsel to represent him. Because the November 7, 2019 Order is a non-appealable interlocutory order, Garcia's appeal of the November 7, 2019 Order does not divest the district court of jurisdiction.

Ordinarily, the act of filing a notice of appeal confers jurisdiction on the court of appeals and divests the district court of jurisdiction over matters related to the appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). That rule, however, does not extend to deficient notices of appeal. To the contrary, "[w]here the deficiency in a notice of appeal, by reason

---

[29] Garcia's appeal of the November 7, 2019 Order has been docketed with the Fourth Circuit Court of Appeals (No. 19-2309).

of…reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc); *see United States v. Jones*, 367 F. App'x 482, 484 (4th Cir. 2010) ("[T]he district court does not lose jurisdiction when the litigant takes an appeal from an unappealable order.") (citing *Griggs*, 459 U.S. at 58).[30]

In this respect, the Fourth Circuit has made abundantly clear that both (i) orders on a plaintiff's motion to amend a complaint and (ii) orders on a party's motion for appointment of counsel do not constitute final orders, appealable interlocutory orders, or appealable collateral orders.[31] Instead, these orders are non-appealable interlocutory orders. *See Miller v. Simmons*, 814 F.2d 962, 967 (4th Cir. 1987) (order denying appointment of counsel); *Fuller v. Narron*, 977 F.2d 572 (4th Cir. 1992) (ordering granting motion to amend complaint). Moreover, the Federal Circuit has appropriately held that a defective notice of appeal "does not become effective to deprive the trial court of jurisdiction simply because the appellate court dockets the appeal." *Gilda Indus., Inc. v. United States*, 511 F.3d 1348, 1351 (Fed. Cir. 2008) (explaining that a defective notice of appeal is docketed in accordance with procedural rules and does not deprive the district court of

---

[30] *See also Rucker v. Dep't of Labor*, 798 F.2d 891, 892 (6th Cir. 1986) ("As a general rule, a district court loses jurisdiction over an action when a party perfects an appeal unless that appeal is untimely, is an appeal from a non-appealable non-final order, or raises only issues that were previously ruled upon in that case by the appellate court."); *Gilda Indus., Inc. v. United States*, 511 F.3d 1348, 1350 (Fed. Cir. 2008) (same); *In re Grand Jury Proceedings*, 795 F.2d 226, 231 (1st Cir. 1986) (same); *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340–41 (10th Cir. 1976) (same).

[31] *See Garland v. Catoe*, 12 F. App'x 102, 103 (4th Cir. 2001) (holding that plaintiff's appeal of an order denying his motion for the appointment of counsel was neither a final order nor an appealable interlocutory or collateral order and thus dismissing the appeal for lack of jurisdiction); *Miller v. Simmons*, 814 F.2d 962, 964, 967 (4th Cir. 1987) (holding that an order denying appointment of counsel is not a final order and is not reviewable by interlocutory appeal and dismissing the appeal for lack of jurisdiction); *Bridges v. Dep't of Maryland State Police*, 441 F.3d 197, 206 (4th Cir. 2006) (holding that "[a] denial of a motion to amend a complaint is not a final order, nor is it an appealable interlocutory or collateral order" and dismissing the appeal for lack of jurisdiction); *Fuller v. Narron*, 977 F.2d 572 (4th Cir. 1992) (holding that an order that granted in part a motion to amend a complaint is neither a final order nor an appealable interlocutory or collateral order and dismissing the appeal for lack of jurisdiction); *see also Bridges v. Dep't of Maryland State Police*, 441 F.3d 197, 207 (4th Cir. 2006) (holding that "[t]he denial of reconsideration of a nonappealable order is not a final order").

jurisdiction).

Thus, Garcia's notice of appeal of the November 7, 2019 Order is defective because it seeks to appeal a non-appealable interlocutory order.[32] Accordingly, Garcia's defective notice of appeal does not deprive the district court of jurisdiction over plaintiffs' motion for default judgment. Moreover, consideration of plaintiffs' motion for default judgment will not be stayed pending decision on Garcia's appeal of the November 7, 2019 Order because that appeal is defective.

## III.

Now that jurisdiction over plaintiffs' motion for default judgment has been established, it is appropriate to consider Garcia's objections to the Magistrate Judge's Report. In his objections, Garcia states that he objects to the entry of default judgment and that he wants to defend himself in this case.[33] Although not a proper objection to the Report, Garcia's request will be construed liberally as a motion to set aside entry of default pursuant to Rule 55(c), Fed. R. Civ. P. Because Garcia fails to show good cause to set aside the entry of default in this case, his motion must be denied.

Rule 55(c), Fed. R. Civ. P., provides that a court may set aside an entry of default "[f]or good cause shown." The Fourth Circuit has not specifically defined "good cause," but it has directed that district courts should consider (1) whether the moving party has a meritorious

---

[32] In the event that Garcia's defective notice of appeal should be construed liberally as a motion for a 28 U.S.C. Section 1292(b) certification for an interlocutory appeal, the motion is denied. To grant an interlocutory appeal, a district court must certify that the order sought to be appealed: "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation…" 28 U.S.C. § 1292(b). The November 7, 2019 Order that Garcia seeks leave to appeal clearly fails all three requirements for a § 1292(b) certification. Accordingly, any motion to certify the November 7, 2019 Order for an interlocutory appeal pursuant to § 1292(b) is denied.

[33] *See* Garcia's Objections to the Report, Dkt. 210, at 7.

defense; (2) whether the moving party acts with reasonable promptness; (3) the defaulting party's culpability for the default; (4) the prejudice to the non-moving party; (5) whether there is a history of dilatory action; and (6) the availability and effectiveness of less drastic sanctions. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006); *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978). The Fourth Circuit has also made clear its strong preference that "defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, the entry of default will not be set aside in this case because none of the six *Payne* factors weigh in Garcia's favor, and five of the six *Payne* factors weigh significantly against him.

The first *Payne* factor, whether Garcia has a meritorious defense, weighs against setting aside the entry of default against Garcia. At a minimum, the party seeking to overturn a default must proffer *some* "*evidence*," not just a "conclusory assertion," that would "permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (quotations omitted) (emphasis added). This evidentiary showing should "underscore the potential injustice of allowing the case to be disposed of by default." 10A Wright, Miller & Kane § 2697. Here, Garcia, the party seeking to set aside the entry of default, has not proffered any evidence that he has a meritorious defense.

For his part, Garcia claims that he possesses valid licensing agreements with plaintiffs and that he has an expert report that states that Robert Braner's signature on the purported licensing agreements, allegedly on behalf of plaintiffs, is in Braner's handwriting.[34] But significantly, Garcia has provided nothing more than his conclusory assertion that he possesses valid licensing agreements with plaintiffs. And notably, he has not provided the expert report to which he refers,

---

[34] *See* Garcia's Objections to the Report, Dkt. 210, at 2, 4.

nor any other evidence that the purported licensing agreements are valid.

In convincing contrast, plaintiffs have attached as an exhibit to the FAC a sworn affidavit from Robert Braner.[35] In his affidavit, Braner avers that he never signed the purported licensing agreements relied on by Garcia.[36] Specifically, Braner attests that "to the extent [the purported licensing agreements] ha[ve] my signature or signatures, they have been fraudulently applied by someone other than me."[37] Braner further states that he knows he did not sign any of the purported licensing agreements relied on by Garcia because the final page of each agreement claims that Braner is signing on behalf of "Automobili Lamborghini S.p.A.," but Braner avers that he had no authority to sign anything on behalf of that entity.[38] Braner was employed by a subsidiary of that entity, Automobili Lamborghini USA, and would only have been authorized to sign documents on behalf of the subsidiary that employed him. Accordingly, Garcia has failed to proffer any reliable evidence that he has a meritorious defense to plaintiffs' claims on this record. Thus, the first *Payne* factor to set aside entry of default weighs significantly against Garcia.

The second and third *Payne* factors, whether Garcia has moved with reasonable promptness to set aside default and whether Garcia bears culpability for the default, also weigh significantly against setting aside entry of default here. In this respect, the record clearly shows that Garcia bears responsibility for his default. On October 23, 2019, Garcia filed a letter stating his intention to proceed *pro se* in this case and acknowledging his intention to comply with all applicable rules

---

[35] *See* Robert Braner Affadavit, Dkt. 182-9.

[36] *See id.* at ¶¶ 38, 41-43, 45, 48-51, 53, 56-58, 60, 65-69.

[37] *Id.* at ¶ 45.

[38] *Id.* at ¶¶ 44, 52, 59, 68.

and procedures.[39] Two weeks later, on November 6, 2019, Garcia filed a letter in which he opposed plaintiffs' motion for leave to file the FAC.[40] On November 7, 2019, an Order issued that granted plaintiffs' motion for leave to file the FAC and overruled Garcia's opposition to plaintiffs' motion.[41] On November 8, 2019, plaintiffs filed the FAC and served the FAC on Garcia.[42] Ten days later, on November 18, 2019, Garcia filed a notice of appeal with respect to the November 7, 2019 Order.[43] Eight days after that, on November 26, 2019, plaintiffs requested entry of default against Garcia because Garcia had not filed an answer to the FAC within 14 days of service as required by Rule 15(a)(3), Fed. R. Civ. P.[44] Garcia has still not filed an answer to plaintiffs' FAC. On May 11, 2020, Garcia filed his objections to the Magistrate Judge's Report on plaintiffs' motion for default judgment and, for the first time, requested that the entry of default be set aside.

On this record, it is unmistakably clear that Garcia waited over five months before filing any request to set aside the entry of default. Moreover, the record indicates that Garcia was aware of the filing of plaintiffs' FAC on November 8, 2019 and chose not to file an answer. Specifically, Garcia filed a notice of appeal ten days after being served with the FAC. And plaintiffs' FAC and request for entry of default were served on Garcia via the email address at which Garcia specifically requested to receive all case-related materials and filings.[45] Thus, Garcia cannot

---

[39] *See* Dkt. 178. In this letter, Garcia also requested the appointment of *pro bono* counsel to represent him. That request was denied. *See* Dkt. 179.

[40] *See* Dkt. 180.

[41] *See* Dkt. 181.

[42] *See* Dkt. 182, 183.

[43] *See* Dkt. 184.

[44] *See* Dkt. 188.

[45] *See* Dkt. 178, at 2 ("I also humbly request your Court to send any notification to my email: joanferci@gmail.com"); Dkt. 183 (certification of service stating plaintiffs served the FAC on Garcia via email at

plausibly claim that he was not aware of plaintiffs' request for entry of default against him or of plaintiffs' FAC. This is not a case where a "blameless party" is "disadvantaged by the errors or neglect of his attorney." *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982). To the contrary, Garcia bears personal responsibility for his default in this case, and he did not promptly move to set aside the default.[46] Accordingly, the second and third *Payne* factors weight significantly against Garcia.

The fourth *Payne* factor, the prejudice to the non-moving party, does not weigh in favor of Garcia either. Because of the possibility that Garcia may continue to infringe on plaintiffs' trademarks, plaintiffs may be prejudiced by further delay in this case. In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010) (citing *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4 (1st Cir. 2010)). And, of course, "no cognizable prejudice inheres in requiring a plaintiff to *prove* a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." *Id.* But the Fourth Circuit has recognized that "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995). Accordingly, undue delay in a trademark infringement case can prejudice plaintiffs due to the "risk of further infringement…[during the] delayed resolution of the case." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 440 (4th Cir. 2011). Plaintiffs initiated this case in January 2018, and over two years later still have not received any

---

joanferci@gmail.com); Dkt. 190 (certification of service stating plaintiffs served the request for entry of default on Garcia via email at joanferci@gmail.com).

[46] *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir.1987) (holding that default judgment should not be set aside where defendants were at fault for not responding to the complaint because "to hold otherwise would be to allow defaulting defendants to escape the consequences of their inaction simply by asserting that the legal process to which they failed to respond was lost").

discovery from Garcia. It is unclear on this record whether Garcia has continued to infringe plaintiffs' trademarks, but if there has been continued infringement, then plaintiffs have suffered additional harm and are prejudiced by further delay. Accordingly, although delay alone is insufficient to constitute prejudice to plaintiffs, the extensive delay in this case, combined with the risk of further infringement during the undue delay, makes clear that the fourth *Payne* factor does not weigh in favor of Garcia and is at best a neutral factor here.

The fifth *Payne* factor, whether Garcia has a history of dilatory action in this case, weighs heavily against Garcia. As noted, plaintiffs filed the original complaint in this action in January 2018 and still have not received any discovery from Garcia. Between January 2018 and December 2018, plaintiffs employed two foreign service forms in an attempt to serve Garcia in Argentina in accordance with the Hague Convention and Rule 4(f)(1), Fed. R. Civ. P.[47] Plaintiffs' attempts at service continually failed due to the evasive tactics employed by Garcia.[48] By Order dated January 18, 2019, over a year after the original complaint was filed, plaintiffs were granted permission to serve Garcia by email pursuant to Rule 4(f)(3), Fed. R. Civ. P. In February 2019, Garcia's attorney filed a notice of appearance and a motion to dismiss the original complaint for failure to state a claim and for lack of personal jurisdiction. After extensive briefing and an evidentiary hearing, Garcia's motion to dismiss for failure to state a claim and for lack of personal jurisdiction was

---

[47] *See* Dkt. 62, at 4-6 (bullet form summary of all steps taken by plaintiffs to serve Garcia between January 12, 2018 and December 8, 2018).

[48] Specifically, on October 2, 2018, Argentinian authorities attempted to serve Garcia at his known address and discovered that it was vacant and under construction. *See* Dkt. 62, at 2. On October 12, 2018, plaintiffs contacted an attorney in Mexico who purportedly represents Garcia in an attempt to effect service. In November 2018, Garcia and this Mexican attorney sent emails to the CEO of plaintiffs' parent company, Volkswagen AG, but continued to ignore plaintiffs' attempts to serve the complaint in this case. *See id.* at 2-3. At one point in this email exchange, the Mexican attorney stated that "Mr. Gracia [sic] does not intend to go to the U.S." *See id.* at 5.

denied by Order dated August 21, 2019.[49] Subsequently, Garcia filed an answer to the original complaint, fired his attorneys, and then refused to answer plaintiffs' FAC or to fulfill his discovery obligations. Specifically, Garcia has refused (i) to produce materials responsive to plaintiffs' First Set of Requests for Production, (ii) to respond to plaintiffs' First Set of Interrogatories, and (iii) to make himself available for a deposition.[50] As noted, plaintiffs served these discovery requests on Garcia's counsel on October 2, 2019, and re-served them on Garcia on October 28, 2019 and November 8, 2019 after Garcia chose to proceed *pro se* in this matter.[51] Despite the December 10, 2019 Order that granted plaintiffs' motion to compel and ordered Garcia to respond to plaintiffs' discovery requests and to appear for a deposition,[52] Garcia has still not fulfilled his discovery obligations. On this record, it is abundantly clear that Garcia has a history of dilatory action in this case, as he has continually used evasive tactics in an attempt to avoid the jurisdiction of the Eastern District of Virginia and has refused to participate in discovery in this matter. Accordingly, the fifth *Payne* factor weighs substantially against Garcia.

Finally, the sixth *Payne* factor, the availability and effectiveness of less drastic sanctions, also weighs against Garcia. Neither party has suggested the availability of a result less drastic than entry of default. Nor is such an alternative readily apparent. The award of the non-movant's costs and attorney's fees is a less drastic sanction sometimes considered by the Fourth Circuit in the context of motions to set aside entry of default pursuant to Rule 55(c). *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010); *Augusta Fiberglass*

---

[49] *See Automobili Lamborghini S.P.A. v. Lamborghini Latino Am. USA*, 400 F. Supp. 3d 471, 478-79 (E.D. Va. 2019).

[50] *See* Plaintiffs' Memorandum in Support of Their Motion to Compel, Dkt. 192, at 1-2.

[51] *Id.* at 2.

[52] *See* December 10, 2019 Order, Dkt. 200.

*Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988). Here, however, a sanction that ordered Garcia to pay plaintiffs' attorney's fees and costs would be ineffective. As noted, Garcia utilized evasive tactics to avoid service in this matter for over a year. In addition, Garcia has categorically refused to participate in any discovery thus far in this matter, even after the December 10, 2019 Order that granted plaintiffs' motion to compel and ordered Garcia to respond to plaintiffs' discovery requests and to appear for a deposition. Simply put, Garcia's behavior in this litigation over the past two years does not inspire confidence that he respects the rules and procedure of United States courts, nor that a less drastic sanction would reasonably ensure his future cooperation in this matter.[53] Accordingly, no effective less drastic sanction is available here, and the sixth *Payne* factor weighs against Garcia.

In sum, none of the six *Payne* factors for determining whether there is good cause to set aside an entry of default weigh in favor of Garcia, and five of the six *Payne* factors weigh significantly against him. Specifically, Garcia has not provided any evidence of a meritorious defense, the entry of default and delay in moving to set aside the entry of default were entirely Garcia's fault, Garcia has a history of dilatory action in this case, and no effective less drastic sanctions are available. Accordingly, Garcia's motion to set aside the entry of default is denied because good cause to set aside default has not been shown.

## IV.

With respect to the entry of default judgment, Garcia objects to the Magistrate Judge's Report on the basis that service was improper because it was not done in accordance with the

---

[53] *See Morton v. Johnson*, No. 7:13CV00496, 2015 WL 4470104, at *5 (W.D. Va. July 21, 2015) (defendant's "'utter failure to defend this matter' between January 2014 and April 2015 or to provide any acceptable justification for that failure, however, does not inspire confidence that he respects this Court's rules and authority); *CoStar Realty Info., Inc. v. Field*, 737 F.Supp.2d 496, 502 (D. Md. 2010) ("[T]he Court believes that [defendant]'s utter failure to defend this matter or to otherwise cooperate…warrants…the entry of default judgment and finds that a less drastic sanction will be ineffective.").

Hague Convention. Because service of the FAC was proper pursuant to Rule 4(f)(3) and because service of the FAC was performed in accordance with Garcia's specific request regarding notification of case filings, Garcia's objection to the Magistrate Judge's Report on the basis of improper service is overruled.

To serve process on an individual in a foreign country, a federal plaintiff must comply with both constitutional due process requirements and Rule 4(f), Fed. R. Civ. P. For service to satisfy constitutional due process, the method of service must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*, 339 U.S. 306, 314 (1950). Rule 4(f), Fed. R. Civ. P., provides three mechanisms for service on an individual in a foreign country:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by [certain specified means outlined in the Rule] reasonably calculated to give notice…; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Rule 4(f)(1)-(3), Fed. R. Civ. P.

Garcia is a resident of Argentina, and the United States and Argentina are both signatories to the Hague Convention.[54] Article 2 of the Hague Convention requires all judicial documents in civil matters to be served through a Central Authority.[55] However, Article 10 permits service of

---

[54] The Hague Convention on Private International law maintains a list of signatories available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

[55] Hague Convention on Service Abroad of Judicial and Extrajudicial Documents Art. 2, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

process through alternative means like "postal channels" and "judicial officers" provided that the destination state does not object to those means.[56] Although Argentina has objected to the means listed in Article 10,[57] its objection is specifically limited to the enumerated means of service in Article 10, which do not include service by email.[58]

Several district courts have permitted service by email under Rule 4(f)(3) after attempts to effect service under the Hague Convention were unsuccessful.[59] Precisely this occurred here. As noted in detail in Part I and Part III *supra*, plaintiffs hired two different foreign service firms and spent nearly twelve months attempting to serve Garcia in Argentina in accordance with the Hague Convention and Rule 4(f)(1), Fed. R. Civ. P.[60] These efforts culminated on October 2, 2018 when Argentinian authorities, acting in accordance with the Hague Convention, attempted to serve

---

[56] *Id.* at Art. 10.

[57] *See* Declarations and Reservations, Hague Convention on Private International Law available at https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=389&disp=resdn.

[58] *See WhosHere, Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (holding that service by email and social media are not explicitly listed as means of service under Article 10 and that Turkey has therefore not specifically objected to service by email or social media by objecting to Article 10; collecting other district court cases that hold the same).

[59] *See, e.g., WhosHere, Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (permitting service by email after plaintiff's attempts to serve Turkish defendant via the Hague Convention were unsuccessful); *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *2-4 (S.D.N.Y. Mar. 7, 2013) (permitting service by email and through social media after plaintiff's attempts to serve Indian defendant via the Hague Convention were unsuccessful); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (permitting email service after plaintiff's attempts to serve Chinese defendant via the Hague Convention were unsuccessful); *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarroloos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 13-16 (D.D.C. 2016) (permitting service by email after plaintiff had attempted to serve foreign defendants via the Hague Convention and investigator was unable to locate defendant's whereabouts); *Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, No. 2:13-cv-458, 2013 WL 1644808, at *1-2 (W.D. Pa. Apr. 16, 2013) (permitting email service on Russian defendant after stating that "the record demonstrates that the Central Authority of the Russian Federation denies all [Hague Convention service] requests originating from the United States"); *Popular Enterprises, LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (permitting email service after plaintiffs' attempts to comply with the Hague Convention's requirements were unsuccessful because defendant's mailing address was unknown).

[60] *See* Dkt. 62, at 4-6 (bullet form summary of all steps taken by plaintiffs to serve Garcia between January 12, 2018 and December 8, 2018).

Garcia at his known address and discovered that it was vacant and under construction.[61] Moreover, Garcia and his Mexican attorney were communicating with plaintiffs via email during this same time period, and they ignored plaintiffs' inquiries related to service of the complaint in this lawsuit.[62] Accordingly, because plaintiffs' attempts to effect service under the Hague Convention were unsuccessful due to Garcia's evasive tactics, plaintiffs' request to serve Garcia via email pursuant to Rule 4(f)(3) was granted by Order dated January 18, 2019.[63]

Importantly, after plaintiffs served the original complaint on Garcia via email, Garcia, through counsel, filed a motion to dismiss the original complaint for lack of personal jurisdiction and for failure to state a claim.[64] But Garcia did not challenge the original complaint for improper or insufficient service. Thus, Garcia waived any challenge to insufficient service of the original complaint. *See* Rule 12(h)(1), Fed. R. Civ. P. (providing that a party waives the defense of insufficient service if not raised in their initial Rule 12 motion).

Nonetheless, the FAC must also be served on Garcia in accordance with Rule 4, Fed. R. Civ. P., because the FAC asserts new claims for relief against Garcia. *See* Rule 5(a)(2), Fed. R. Civ. P. In this respect, Garcia specifically requested that all case filings and case-related notifications be sent to him via his email address in his letter filed on October 23, 2019.[65] Garcia's request that all case-related notifications be sent to his email address is particularly important here

---

[61] *See* Dkt. 62, at 2.

[62] *See id.* at 2-3.

[63] *See* Dkt. 70.

[64] *See* Dkt. 81, 82.

[65] *See* Dkt. 178, at 2 ("I also humbly request your Court to send any notification to my email: joanferci@gmail.com"); Dkt. 183 (certification of service stating plaintiffs served the FAC on Garcia via email at joanferci@gmail.com).

because even Garcia's attorneys had difficulty contacting him about this litigation prior to their withdrawal.[66] A mere two weeks after Garcia informed all parties that any case-related notifications should be sent to his email address, and only two days after Garcia filed an opposition to plaintiffs' motion for leave to file the FAC, plaintiffs served the FAC on Garcia via his specified email address.

On this record, it is abundantly clear that the FAC was properly served on Garcia in accordance with Garcia's specific request regarding notification of case filings and in accordance with Rule 4(f)(3), Fed. R. Civ. P. No plausible argument can be made that Garcia did not have reasonable notice of the action against him; Garcia, through counsel, aggressively litigated the sufficiency of the original complaint via a Rule 12(b)(2) and 12(b)(6) motion *and* Garcia filed a *pro se* opposition to plaintiffs' motion for leave to file the FAC. Moreover, it is clear that Garcia has been afforded the opportunity to present his objections to the FAC, as evidenced by his opposition to plaintiffs' motion for leave to file the FAC and by his objections to the Magistrate Judge's Report. Accordingly, Garcia's objections to the Magistrate Judge's Report based on insufficient service are overruled.

## V.

Finally, Garcia generally objects to all of the Magistrate Judge's recommendations in the Report and requests that all the Report's recommendations be rejected. Because general objections are tantamount to a failure to object and because there is no clear error in the Report, Garcia's general objection to the Report and its recommendations must be overruled.[67]

---

[66] *See* Dkt. 176, at 1 ("Counsel represented to the Court that Counsel has received no response from Mr. Garcia to the communication of the discovery plan.").

[67] *See Tyler v. Wates*, 84 Fed. Appx. 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object."); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (in the absence of any objections to a magistrate's report, the court "need not conduct a *de novo*

Pursuant to 28 U.S.C. § 636(b)(1), a *de novo* review of "those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made" is required. 28 U.S.C. § 636(b)(1). In this respect, the objection requirement is designed to allow the district court to "focus on specific issues, not the [magistrate judge's] report as a whole." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007). Therefore, objections must be specific and particularized in order to direct the attention of the district court to "only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *Id.* Thus, the Fourth Circuit has made clear that "[a] general objection to the entirety of the magistrate judge's report is tantamount to a failure to object." *Tyler v. Wates*, 84 Fed. Appx. 289, 290 (4th Cir. 2003).

Garcia's request to "reject all the recommendation of the Magistrate Judge" is precisely the type of general objection categorized as a failure to object by the Fourth Circuit.[68] Accordingly, all aspects of the Report not already addressed in this Opinion are subject only to clear error review, and there is no clear error on the face of the record in this case. In any event, even assuming, *arguendo*, that *de novo* review of the Magistrate Judge's entire Report were warranted in this case (which it is not), the findings and recommendations in the Magistrate Judge's Report are appropriate and should be adopted.

---

review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'").

[68] *See* Garcia's Objections to the Report, Dkt. 210, at 8. Garcia makes one additional specific objection that has not already been addressed and that can be disposed of succinctly. Garcia objects to the Magistrate Judge's Report because he claims there is an ongoing case in Argentina that covers similar issues to those raised in this case. *See id.* at 2-3. But the ongoing litigation in Argentina does not preclude the entry of default judgment in this case because that litigation has not yet concluded. *See Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 555 (9th Cir. 1992) (affirming a preliminary injunction against the sale of counterfeit Reebok shoes in Mexico despite apparently related ongoing litigation in Mexico; finding that "the Mexican litigation presented no conflict with the district court's order because the litigation in Mexico had not yet been concluded"). Because there has been no adjudication on the merits in the Argentinian courts based on the documents submitted by Garcia, there is no danger at this time of this default judgment interfering with the laws of a foreign nation. Moreover, the FAC only seeks relief for Garcia's alleged violations of the Lanham Act in the United States, *not* for alleged sales of counterfeit items in any foreign country.

Specifically, the Report appropriately concluded that plaintiffs sufficiently plead a claim of trademark infringement and counterfeiting in Count I. To state a claim of trademark infringement, a plaintiff must show that (1) it owns a valid mark; (2) the defendant used the mark in commerce and without authorization; (3) the defendant used the mark, or an imitation of the mark, in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (4) the defendant's use of a colorable imitation of the mark is likely to cause confusion among consumers. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (citations omitted). Lamborghini possesses valid, protectable trademarks registered with the USPTO. Registration with the USPTO constitutes "*prima facie* evidence of the validity" of the trademarks as well as Lamborghini's exclusive right to use the trademarks. *See* 15 U.S.C. § 1057(b). Plaintiffs adequately allege that Garcia used, and continues to use, Lamborghini's trademarks without its permission in commerce and in connection with the sale, offering for sale, distribution, and advertising of infringing goods. And Garcia's infringing conduct is highly likely to confuse customers because the marks on defendants' counterfeit products are virtually identical to Lamborghini's registered trademarks.[69] Thus, the entry of default judgment against Garcia on Count I, trademark infringement and counterfeiting, is appropriate on this record.

The Report also appropriately concluded that plaintiffs sufficiently plead a claim of false designation of origin in Count III. The required elements for a false designation of origin claim are essentially the same as the elements for a trademark infringement claim under the Lanham Act.

---

[69] *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (holding that when the allegedly infringing mark is nearly an exact imitation of a plaintiff's trademark in an apparent attempt to capitalize on a plaintiff's trademark's popularity, the court may presume a likelihood of confusion among consumers). The Report appropriately addresses the nine factors that the Fourth Circuit has stated courts should consider in determining the likelihood of consumer confusion. *See* Report, Dkt. 209, at 15-16 (applying the nine factors enumerated by the Fourth Circuit to determine the likelihood of consumer confusion to the facts alleged here); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (setting forth the nine factors to consider to determine the likelihood of consumer confusion).

*See Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (stating that trademark infringement and false designation of origin claims have the same elements). Accordingly, the entry of default judgment against Garcia on Count III, false designation of origin, is appropriate on this record for the same reasons that the entry of default judgment against Garcia on Count I is appropriate.

The Report's conclusion that plaintiffs sufficiently plead a claim of trademark dilution in Count IV is also appropriate. To state a claim of federal trademark dilution, a plaintiff must show:

> (1) that the plaintiff owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark.

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007). First, plaintiffs allege that Lamborghini's trademarks are famous and distinctive due to their decades of use in connection with Lamborghini's high-quality products and services. Second, Garcia used Lamborghini's trademarks, or at least marks that were essentially identical to Lamborghini's trademarks, in connection with the advertisement, promotion, and sale of counterfeit products. Moreover, when consumers purchase items and expect to receive genuine Lamborghini products, Lamborghini's reputation and brand is harmed when they receive low-quality products that are not manufactured to Lamborghini's standards. Third, there is a clear similarity between the counterfeit marks and Lamborghini's trademarks that gives rise to an undesired association between the marks. And fourth, the association between Garcia's counterfeit marks and Lamborghini's trademarks is likely to harm the reputation of Lamborghini's marks. Accordingly, the entry of default judgment against Garcia on Count IV, trademark dilution, is appropriate on this record.

With respect to Counts I, III, and IV, plaintiffs request monetary damages and injunctive

relief. When a defendant uses a counterfeit mark under the Lanham Act, the trademark owner may

elect to recover an award of statutory damages. *See* 15 U.S.C. § 1117(c). Section 1117(c) provides

that "if the court finds that the use of the counterfeit mark is willful" the maximum award of

statutory damages is $2,000,000 "per counterfeit mark per type of goods or services sold, offered

for sale or distributed." *Id.* Here, it is abundantly clear that Garcia willfully used counterfeit

versions of plaintiffs' trademarks to sell counterfeit products in the United States. Plaintiffs have

requested statutory damages for each type of counterfeit goods that plaintiffs' investigator

purchased in the United States via defendants' website, www.lamborghinigrupo.com. Plaintiffs

attached to the FAC copies of purchase receipts for (1) cigars and cigar boxes, (2) t-shirts, and (3)

flags that displayed counterfeit Lamborghini marks.[70] Accordingly, because Garcia willfully used

counterfeit versions of plaintiffs' trademarks to sell three different types of goods in the United

States, a $6,000,000 award of statutory damages, the maximum amount of statutory damages

available pursuant to 15 U.S.C. § 1117(c), is the appropriate remedy here.

Plaintiffs also seek a permanent injunction that prohibits Garcia from (1) advertising,

marketing, and selling unauthorized and unlicensed counterfeit products that infringe on

Lamborghini's federally-registered trademarks and (2) using Lamborghini's federally-registered

trademarks. The Lanham Act provides that a court may grant permanent injunctive relief to prevent

the infringement of trademarks. *See* 15 U.S.C. § 1116(a). To obtain a permanent injunction in the

Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate
for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

---

[70] *See* Dkt. 182-6 (receipt and shipping label for purchase of counterfeit Lamborghini-branded cigars and t-shirts
shipped to Virginia); Dkt. 182-7 (receipt, packing slip, and photos of counterfeit Lamborghini-branded cigars and
flag shipped to Florida).

in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, a permanent injunction against Garcia is appropriate because all four elements are satisfied. As the Magistrate Judge's Report appropriately found, plaintiffs suffered, and continue to suffer, irreparable injury because of Garcia's willful infringement of plaintiffs' trademarks. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) (citation omitted) ("[W]e recognize that irreparable injury regularly follows from trademark infringement."). Second, other available remedies at law are inadequate to compensate plaintiffs because other remedies do not prevent Garcia from continuing to sell counterfeit Lamborghini products. Third, Garcia would not face hardship from a permanent injunction because the permanent injunction would only require that Garcia follow clearly established trademark law and stop his infringing activity. Fourth, the public interest favors an injunction here because an injunction would protect the public from purchasing Garcia's counterfeit, inferior products. Accordingly, a permanent injunction against Garcia is an appropriate remedy here for plaintiffs' claims in Counts I, III, and IV.

Finally, plaintiffs seek declaratory relief in Counts V, VI, and VII of the FAC. When a federal district court has "a case of actual controversy within its jurisdiction," the Declaratory Judgment Act allows the court to "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). Here, Lamborghini seeks three declarations of its rights: (1) that Garcia's purported licensing agreements with Lamborghini are invalid (Count V), unenforceable (Count VI), and fraudulent (Count VII); (2) that Garcia has no rights from Lamborghini to license,

manufacture, and sell Lamborghini-branded merchandise in the United States;[71] and (3) Lamborghini has never conveyed a license or otherwise authorized Garcia to use Lamborghini trademarks in the United States by any agreement or otherwise. As noted in detail Part I *supra* and in the Magistrate Judge's Report,[72] Garcia and Lamborghini did not reach an agreement on the sales and licensing agreements that the parties discussed in 1995. Moreover, Braner has submitted a sworn affidavit that to the extent his signature is on any purported licensing agreement between Lamborghini and Garcia, it has been fraudulently affixed to the purported licensing agreement because he never signed the document. Accordingly, on this record, the purported licensing agreements attached to plaintiffs' FAC are invalid, unenforceable, and fraudulent because plaintiffs never assented to the formation of a contract or licensing agreement with Garcia. *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and therefore, no contract."). Thus, plaintiffs are entitled to declaratory relief.

*     *     *

For the reasons set forth above, Garcia's objections are overruled, the Magistrate Judge's Report is adopted in its entirety in accordance with this Opinion,[73] and plaintiffs' motion for default

---

[71] Plaintiffs' request also asks for a declaration that Garcia has no rights from Lamborghini to license, manufacture, and sell Lamborghini-branded merchandise *anywhere in the world*. Such a declaration is beyond the power of the Court, and therefore plaintiffs' request will be denied in this respect.

[72] *See* Report, Dkt. 209, at 11-14, 19-21.

[73] This includes the Report's denial of default judgment against Garcia with respect to Count II. Denial of default judgment with respect to Count II is appropriate because plaintiffs did not request transfer of the only domain name listed in the FAC in their motion for default judgment (lamborghinigrupo.com). Instead, plaintiffs requested the transfer of domain names not listed in the FAC in their motion for default judgment, a request that is inappropriate in a default judgment motion because proper notice has not been provided to the defendant. The Report's recommendation with respect to Count II is not discussed in greater detail because Garcia does not object to the denial of default judgment against him on Count II. Accordingly, the Report's findings and recommendations with respect to Count II are reviewed for clear error, and no clear error has been found. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (in the absence of any objections to a magistrate's report, the court

judgment is granted in part and denied in part.

An appropriate order will issue separately.

The Clerk is directed to send a copy of this Opinion to all counsel of record and to Mr.

Garcia via email at joanferci@gmail.com pursuant to Mr. Garcia's request.


Alexandria, Virginia
May 21, 2020

/s/
T. S. Ellis, III
United States District Judge

---

"need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'").